UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
JOHN AND JANE DOES,                     )
                                        )
            PLAINTIFFS,                 )
                                        )
v.                                      )    No. _____
                                        )
REPUBLIC OF IRAN,                       )
                                        )
            DEFENDANT.                  )
_____ )
```

# COMPLAINT

1. This is a Complaint brought by Plaintiffs John and Jane Does (the "Plaintiffs"), foreign individuals who are members of a family, against the Republic of Iran ("Iran"). The U.S. Government has designated Iran as a state sponsor of terrorism. Iran has persecuted and inflicted both physical and pecuniary harm on the Plaintiffs, including torture and hostage-taking, because one of them has worked as an informant to the U.S. Government regarding Iran's international terrorist activities. Specifically, Iran provided weapons, training, financial support and "safe harbor" to agents who inflicted this harm on the Plaintiffs. This is a tort committed in violation of international law, redressable in U.S. federal court, under the Foreign Sovereign Immunities Act ("FSIA"), the Alien Tort Statute ("ATS"), the Anti-Terrorism and Effective Death Penalty Act ("ATEDPA") and the Torture

Victim Protection Act ("TVPA"). The Plaintiffs seek a judgment for money damages, attorney's fees, and all other available relief.

## Parties

2. The Plaintiffs are foreign individuals currently residing outside the United States. They identify themselves as John and Jane Does because of the continuing threat of persecution and violence by Iran and its agents against them, and their families and friends.

3. Defendant Iran is a "foreign state" (*i.e.*, foreign government) within the meaning of 28 U.S.C. § 1330(b).

## Jurisdiction and Venue

4. <u>FSIA</u>. As a U.S. federal district court recently summarized:

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). The Act provides that foreign states ordinarily enjoy sovereign immunity from suits in U.S. courts, *see* 28 U.S.C. § 1604, but also establishes several exceptions to that rule*, see, e.g., id*. §§ 1605-1605B. One of these—the "state-sponsored terrorism exception"—strips foreign states of sovereign immunity against, and grants federal courts subject matter jurisdiction to hear, certain claims "against countries who have . . . supported specified acts of terrorism and who are designated by the State Department as state sponsors of terror." *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1605 (2020); *see* 28 U.S.C. §§ 1330(a), 1605A(a)(1). The Act also creates a federal cause of action allowing certain categories of plaintiffs, including U.S. nationals, to seek money damages from foreign states for "personal injury or death" arising from acts of terrorism covered by the Act's jurisdictional provisions. 28 U.S.C. § 1605A(c); *see Opati*, 140 S. Ct. at 1606. Plaintiffs who are not eligible to pursue this cause of action—such as most non-U.S. nationals— can still invoke the FSIA's waiver of sovereign immunity and grant of subject matter jurisdiction but must rely on state-law

causes of action. *See Owens v. Republic of Sudan*, 924 F.3d 1256, 1258 (D.C. Cir. 2019).

*Hammons v. Islamic Republic of Iran*, Nos. 1:19-cv-02518 & 1:20-cv-01058, slip op. (D.D.C. Sept. 25, 2023).  The United States designated Iran as a state sponsor of terrorism in 1984. *See* Determination Pursuant to Section 6(i) of the Export Administration Act of 1979—Iran, 49 Fed. Reg. 2836-02 (Jan. 23, 1984) (statement of Secretary of State George P. Shultz); *see also Selig v. Islamic Republic of Iran*, 573 F. Supp. 3d 40, 59 (D.D.C. 2021).  That designation was in effect during all times relevant to this case, and it remains in effect.

5. Although none of the Plaintiffs was or is a citizen of the United States, one of them, John Doe A, was "otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," 28 U.S.C. § 1605A(a)(2)(A)(ii)(III), as an informant to the U.S. Government regarding Iran's international terrorist activities.

6. <u>ATS</u>.  The ATS, which dates back to 1789, provides as follows: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.  This statute creates a private right of action for tort claims that "rest on a norm of international character accepted by the civilized world." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725 (2004).

7. <u>ATEDPA</u>. Under the Anti-Terrorism and Effective Death Penalty Act, *inter alia:*

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— . . . (3) in which rights in property taken in violation of international law are in issue . . . .

28 U.S.C. § 1605. Under this provision, *inter alia,* Iran can make no claim of sovereign immunity.

8. <u>TVPA</u>. Section 2(a)(1) of the Torture Victim Protection Act also establishes a claim for the Plaintiffs, and liability for Iran, as follows:

> (a) LIABILITY.—An individual who, under actual or apparent authority, or color of law, of any foreign nation— (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual.

28 U.S.C. § 1350 note.

> (1) the term "torture" means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind; and
> (2) mental pain or suffering refers to prolonged mental harm caused by or resulting from—
> (A) the intentional infliction or threatened infliction of severe physical pain or suffering;
> (B) the administration or application, or threatened administration or application, of mind[-]altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
> (C) the threat of imminent death; or
> (D) the threat that another individual will imminently

be subjected to death, severe physical pain or suffering, or the administration or application of mind[-]altering substances or other procedures calculated to disrupt profoundly the senses or personality.

*Id.* § 3(b)(1).

9. Subject-matter jurisdiction of this case also is established under federal question jurisdiction: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

10. This Court has personal jurisdiction of Iran, as a "foreign state." 28 U.S.C. § 1330(b).  District courts possess original subject-matter jurisdiction "without regard to the amount in controversy" over: (1) nonjury civil actions, (2) as to any claim for relief *in personam*, (3) against a foreign state, (4) provided that the foreign state is not entitled to immunity under sections 1605 to 1607 of the FSIA. 28 U.S.C. § 1330(a); *accord Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 75 (D.D.C. 2017).  This is such an action.

### **Allegations**

11. One of the Plaintiffs ("John Doe A") provided very detailed and specific information to the U.S. Federal Bureau of Investigation ("FBI") regarding the efforts of the Government of Iran to evade U.S. and international sanctions, including the details of large, specific financial transfers for that purpose.  John Doe A conveyed that information at a face-to-face meeting with the FBI in

5

Washington, D.C.; numerous visits to a U.S. facility at an overseas location;[1] and numerous texts and instant messages to a United States telephone number.

12. To help collect such information, John Doe A hired family members John Doe B and John Doe C, who were located in Iran.

13. The information that John Doe A conveyed to the FBI appears to have resulted in, among other things, a drone attack by the United States Government that killed a terrorist.

14. It appears that John Doe A was filmed by agents of the Government of Iran when entering the U.S. facility at the overseas location mentioned above.

15. As a result of the Government of Iran identifying him in this manner, John Doe A's car was set on fire – on information and belief, by agents of the Government of Iran.

16. Several persons, resembling Iranians, went to John Doe A's home, apparently with the intention of killing, torturing or kidnapping him. On information and belief, these persons were agents of the Government of Iran. These persons entered his home. John Doe A escaped from them, however.

17. A business acquaintance of John Doe A, with close ties to Iran, told John Doe A that the Islamic Revolutionary Guard Corps ("IRGC"), a organization

---

[1] That location being the sovereign territory of the United States, under international law.

within the Government of Iran, knows that he provided information to the United States Government, and it intends to kill him.

18. John Doe A also has received texts and instant messages threatening action against him by the IRGC.

19. Iranian intelligence agents, who identified themselves as such, broke into the home of John Doe B and John Doe C, and threatened them and their children. They fled from Iran. The nearby country where they are now domiciled publicly hosts numerous agents of the Government of Iran, so they must live there in secret.

20. These actions, *i.e.,* the attacks on John Does A, B and C and their property, qualify as acts of terrorism. They also are "caused" by the Defendant's acts of terrorism because they are done in the service of terrorism, *i.e.,* to punish John Does A, B and C for the information that they provided to the U.S. Government regarding the Defendant's terrorism.

21. The Government of Iran's identification of John Doe A as someone who has provided information to the United States Government regarding terrorism is the proximate cause of the attacks on the Plaintiffs and their property.

22. It has been publicly reported that agents of the Government of Iran have killed dozens of persons on foreign soil, and kidnapped hundreds of them.[2] This activity, and the fact that the Government of Iran does so with impunity, has added to the fear and anxiety of the Plaintiffs.

23. John Doe A must now avoid any public interaction, in order to remain safe. This has required him to shut down four businesses that he owned, all of which require public interaction. The value of these businesses exceeded $5 million. His claim for the loss of these businesses qualifies as "economic damages." *See* 28 U.S.C. § 1605A(c).

---

[2] There are numerous official reports of this by the U.S. State Department and the United Nations. From the State Department, *see, e.g.,*: (1) "Country Reports on Human Rights Practices for 2004", which was submitted to the Senate Committee on Foreign Relations and the House Committee on International Relations; (2) a 2018 report by an initiative within the State Department known as the "Iran Action Group" titled "Outlaw Regime: A Chronicle of Iran's Destructive Activities"; (3) a report from the Bureau of Democracy, Human Rights, and Labor within the State Department titled, "2019 Country Reports on Human Rights Practices: Iran"; (4) a report from the Bureau of Counterterrorism within the State Department titled, "Country Reports on Terrorism 2019"; and a report from the Bureau of Counterterrorism within the State Department titled "Country Reports on Terrorism 2020". From the United Nations Special Representative of the Commission on Human Rights, there were reports in 1993, 1996, 1999 and 2000, and a communication in 2000 from the U.N. Working Group on Arbitrary Detention to the Government of Iran. There also are numerous public reports about this. For instance, British Intelligence has stated that there were ten plots by the Government of Iran to kidnap or kill people in the United Kingdom during 2022 alone. https://www.bbc.com/news/uk-63647366

24. These actions of the Government of Iran have caused the Plaintiffs to live in constant fear. They have intentionally inflicted emotional distress, induced severe mental anguish and emotional and psychological pain and suffering,[3] and caused the need for medical treatment for the Plaintiffs.

25. The courts of both the United States and Pakistan recognize an action to redress severe emotional distress and mental anguish, and emotional and psychological pain and suffering, as well as assault, as valid causes of action.

26. The Plaintiffs are not U.S. nationals. Non-U.S. national plaintiffs can pursue state-law causes of action using the FSIA's sovereign immunity waiver, however. *See, e.g., Owens v. Republic of Sudan*, 924 F.3d 1256, 1258 (D.C. Cir. 2019).

27. The Plaintiffs have offered the Defendant a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration. The Defendant has not accepted that offer.[4]

---

[3] When one suffers from the knowledge of harm to relatives, this is known as a "solatium" claim. *See* 28 U.S.C. § 1605A(c).

[4] The Plaintiffs submit that this Complaint qualifies as "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the Defendant decides to defend this action, then the Plaintiffs will seek to provide further information only under protective order. If the Court desires further information, the Plaintiffs respectfully request that such information be submitted *in camera* and under seal. For present purposes, to preserve their safety, Plaintiffs move (by related motion) to proceed anonymously. Plaintiffs understand that if they seek a default judgment, they must "establish[] [their] claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e) that is "sufficient

## FIRST CLAIM:

## Terrorism Exception To The Jurisdictional Immunity Of A Foreign State

28. Pursuant to the allegations above, this action qualifies for the statutory "terrorism exception" to the general jurisdictional immunity of a foreign state in federal courts, and the private right of action established by that federal statute. 28 U.S.C. § 1605A.

29. As alleged in this Complaint, money damages are sought against the Defendant, a foreign state, for personal injury that was caused by an act of torture,[5] and hostage-taking.[6] Money damages also are sought against the Defendant for the

---

for a court to come to the `logical conclusion' that the defendant is responsible for the plaintiffs' injuries." *Han Kim v. Dem. People's Repub. of Korea*, 774 F.3d 1044, 1051 (D.C. Cir. 2014).

[5] Specifically, the attacks against John Doe A, and John Doe B and C, in their homes, satisfy the statutory definition of "torture" because the attacks were directed against them while in the Defendant's custody or physical control (albeit temporary), in which severe pain or suffering was intentionally inflicted on them for purposes covered by the statute, including obtaining (from them, each other or others) information or a confession, punishing them for the information that they were believed to have provided to the U.S. Government, and intimidating or coercing them. 28 U.S.C. § 1350 note.

[6] Specifically, the attacks against John Doe A, and John Doe B and C, in their homes, satisfy the statutory definition of "hostage-taking" under 28 U.S.C. § 1605A(h)(2), which corresponds to "the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages." *Id.* The Convention provides the following meaning:

> Article 1. 1. Any person who seizes or detains and threatens to kill, to injure or to continue to detain another person (hereinafter referred to as the "hostage") in order to compel a third party, namely, a State, an international intergovernmental organization, a natural or juridical person, or a group of

"provision of material support or resources" for such an act. The statutory definition of "material support or resources" extends to any property, service or transportation. 18 U.S.C. § 2339A(1). In this case, the agents of the Defendant performed the "service" of threatening and menacing the Plaintiffs, and torching John Doe A's car, in the manners alleged. On information and belief, these were engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency (indeed, multiple such persons).

30. The Government of Iran is designated as a state sponsor of terrorism, and has been since January 19, 1984 (*i.e.,* at all relevant times).

31. As alleged above, due to his activities as an informant to the U.S. Government, John Doe A was, at the time of the acts at described above, an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the

---

persons, to do or abstain from doing any act as an explicit or implicit condition for the release of the hostage commits the offence of taking of hostages ("hostage-taking") within the meaning of this Convention.
2. Any person who:
   (a) Attempts to commit an act of hostage-taking, or
   (b) Participates as an accomplice of anyone who commits or attempts to commit an act of hostage-taking
likewise commits an offence for the purposes of this Convention.

The attacks on both John Doe A and on John Does B and C fall within the scope of this meaning.

employee's employment.[7]  John Doe A employed John Doe B and John Doe C to do the same.

33. 32.  By letter, counsel for the Plaintiffs has afforded the Defendant a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration, and he received no response.

33.  This action is brought within 10 years after the date on which the cause of action arose.

34.  There is a private right of action under 28 U.S.C. § 1605A(c).  This is an action for personal injury within the meaning of 28 U.S.C. § 1605A(c).

35.   The Defendant is liable for the acts of its officials, employees, and agents, as alleged above.

36.  The Plaintiffs intend to assert (and hereby assert) their right to recovery for "reasonably foreseeable property loss," under 28 U.S.C. § 1605A(d).

37.  Plaintiffs note that the "baseline assumption" in such cases is $5 million in compensatory damages.  *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007).  Economic damages and "solatium" damages are in addition to this amount.

---

[7] There is no doubt that the FBI "employed" John Doe A as an informant, so in that sense, he has been an "employee" of the U.S. Government.  John Doe A also contends that he had a "contract" with the U.S. Government, under the Rewards for Justice program.  *See RewardsForJustice.net.*  John Doe A, in turn, employed John Doe B and John Doe C to act as such employees/contractors.

38. As to damages under this claim, the Plaintiffs seek compensatory, economic, consequential, incidental and punitive money damages in an amount substantially exceeding $5 million.

39. In addition to the specific allegations above, Plaintiffs seek all relief due to the under federal law, including the FSIA, ATS, ATEDPA and TVPA.

## SECOND CLAIM:

### D.C. Law – Intentional Infliction of Emotional Distress, Assault and Tortious Interference With Business Relations

40. Even in the absence of a valid claim under the waiver provision of 28 U.S.C. § 1605A, a claimant against a foreign sovereign may assert state-law tort-type claims, such as the claims under the Alien Tort Statute that preceded the enactment of 28 U.S.C. § 1605A. *See, e.g., Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 333 (D.C. Cir. 2003); *Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 46 (D.D.C. 2020). The Alien Tort Statute applies here because, *inter alia,* some of the relevant conduct took place in the United States, such as John Doe A's meeting with the FBI in Washington, D.C., his meetings at a location within the sovereign territory of the United States, and his provision of information to a telephone number located in the United States. Furthermore, the fact that the Plaintiffs provided "actionable" information to the United States against foreign enemies that the United States Government actually did use – in a drone attack,

killing a terrorist – indicates that the facts of this case "touch and concern" the United States.[8]  Specifically, it "touches and concerns" the United States when foreign enemies harass (and threaten to kill) informants for providing their information to the United States Government.

41. The Plaintiffs are non-U.S. nationals, within the meaning of the Alien Tort Statute.  The Defendant's actions violate customary international law.

42.  The Plaintiffs assert a claim against the Defendant for intentional infliction of emotional distress under District of Columbia law.  The circumstances under which the Defendant intentionally inflicted emotional distress on John Does A, B and C are described above.  The remaining John Does are family members who personally witnessed the attacks on John Does A, B and C, and suffered the resulting emotional distress themselves.

43. Under D.C. law, the actions by the Defendant and its agents qualify as extreme and outrageous conduct on the part of the defendant.  The Defendant acted intentionally; for instance, it was not merely "reckless" for the Defendant's agents to set fire to John Doe A's car.  As alleged above, these actions by the Defendant and its agents caused the Plaintiffs to suffer severe emotional distress. *See Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).

---

[8] *See Kiobel v. Royal Dutch Petroleum Co.,* 569 U.S. 108, ___, 133 S.Ct. 1659, 1673 (2013) (Breyer, J. concurring).

44. The Plaintiffs also allege the District of Columbia claim of civil assault against the Defendant. Civil assault is the intentional attempt or threat to cause physical harm or offensive contact to another person. The Defendant, acting through its agents, intentionally attempted and threatened to cause physical harm to the Plaintiffs.

45. John Doe A alleges the District of Columbia claim of tortious interference with business relations against the Defendant. As alleged above, the actions of the Defendant required John Doe A to hide, and otherwise refrain from public interaction. This caused the destruction of his businesses. Up to that point, there was a valid contractual or other business relationship between the businesses of John Doe A and the customers, both existing and prospective. The Defendant knew of and intentionally interfered in that relationship. This caused resulting damages and pecuniary losses, *i.e.,* the end of those businesses.

46. The Defendant's actions toward the Plaintiffs were outrageous, reckless, and malicious, and in willful disregard of the Plaintiffs' rights.

47. As to damages under this claim, the Plaintiffs seek compensatory, economic, consequential, incidental and punitive money damages in an amount substantially exceeding $5 million.

48. The Defendant has sufficient "minimum contacts" with the United States to establish personal jurisdiction.[9]

## PRAYER FOR RELIEF

49. The Plaintiffs seek a judgment against the Defendant for compensatory, economic, consequential, incidental, and punitive money damages against the Defendant in an amount to be determined by the Court. Plaintiff alleges that this amount substantially exceeds $5 million.

50. The Plaintiff also seeks the award of attorney's fees, costs, and all other relief available under applicable law.

## DEMAND FOR JURY TRIAL

51. The Plaintiff requests a trial by jury for all issues that may be tried by a jury.

Respectfully submitted,

/s/ Alan Grayson
Alan M. Grayson, Esq.
D.C. Bar No. 388633
Mailing address: 870 N. Miramar Ave. #242
Indialantic, FL 32903
(407) 493-9633

---

[9] There is a myriad of cases in this Court that have found personal jurisdiction over the Government of Iran.

Date: May 7, 2024          Counsel for the Plaintiffs